RIMM, J.T.C.
This is a gross income tax case. Plaintiff, a member of the United States Navy in 1982, contends that he was not domiciled in New Jersey in that year. He therefore claims that he is not liable for gross income tax on his Navy compensation. The case is controlled by two statutory provisions. N.J.S.A. 54A:6-1 provides as follows:
The items in sections 54A:6-2 to 54A:6-9, inclusive, shall be specifically excluded from gross income.
N.J.S.A. 54A:6-7a. provides as follows:
Compensation paid by the United States for service in the armed forces of the United States performed by an individual not domiciled in this State.
Claiming that these statutory provisions, and the provisions of 50 U.S.C.A.App. § 574 (Soldiers’ and Sailors’ Civil Relief Act of 1940), hereinafter § 574, applied to him, plaintiff did not pay any New Jersey gross income tax on his income as a member of the United States Navy during the tax year 1982. The relevant part of § 574 is as follows:
For the purposes of taxation in respect of any person, or of his personal property, income, or gross income, by any State, Territory, possession, or political subdivision of any of the foregoing, or by the District of Columbia, such person shall not be deemed to have lost a residence or domicile in any State, Territory, possession, or political subdivision of any of the foregoing, or in the District of Columbia, solely by reason of being absent therefrom in compliance with military or naval orders, or to have acquired a residence or domicile in, or to have become resident in or a resident of, any other State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia, while, and solely by reason of being, so absent.
Defendant, Director, Division of Taxation, assessed gross income taxes against plaintiff for the tax year 1982 in the amount of $914.19, together with a penalty in the amount of $45.71 and interest to May 15, 1985 in the amount of $171.41, for a total of $1,131.31. The assessment was based, among other things, on the execution by plaintiff of a homestead rebate form submitted for the tax year 1982 in which plaintiff indicated his principal residence was in New Jersey. Following *14 the making of the assessment, defendant waived the penalty, and thereafter taxes and interest totalling $1,085.60 were paid by plaintiff on May 8, 1985. Plaintiff then filed a complaint in the Tax Court seeking to have the assessment set aside and the taxes and interest refunded. Defendant filed an answer demanding judgment in his favor dismissing the complaint and upholding his assessment of gross income tax against plaintiff for the 1982 tax year.
At trial, plaintiff testified that he entered the United States Navy on April 17, 1958. At that time he lived with his parents at 8046 Burholme Avenue, Philadelphia, Pennsylvania and held a valid Pennsylvania driver’s license, originally issued in 1953. The license was in effect in 1982. There was also marked in evidence a “Report of Home of Record and Place from Which Ordered to a Relevant Tour of Active Duty,” form NAVPERS 262, which was signed by plaintiff and dated December 5, 1960. The form indicated that plaintiff's home of record and the place from which he was ordered to active duty was 8046 Burholme Avenue, Philadelphia, Pennsylvania.
The witness testified that he regarded his parents’ home in Philadelphia, Pennsylvania, as his place of residence and as his “domicile.” It had been his intention, he testified, to return to the Philadelphia address ultimately as his place of residence. However, prior to his transfer to New Jersey on July 14, 1978, he had been stationed in Georgia and had private housing in Marietta, Georgia for four years. During that period of time, he gave up his intention to return to Pennsylvania and determined that, upon his separation from the Navy, he would live in the South, either in Georgia or South Carolina. The following testimony is before the court in response to the indicated questions on recross examination:
Q. Mr. Wolff, at any time during your military service, did you have an intention of, upon your discharge, returning to the Philadelphia home?
A. I would say, yes.
Q. And how long did that intention last?
A. Well, it lasted until we went to Georgia and then definitely when we got to New Jersey, that we had decided at some point in time, depending on job and whatever have you, to return to either South Carolina or Georgia.
*15 Q. So that during the time you were in New Jersey you did not have an intention to return to Philadelphia as a place of permanent residence?
A. I would say that’s correct, yes.
Shortly after being transferred to New Jersey in 1978, plaintiff purchased a single-family residence at 845 Somerset Drive, Toms River, New Jersey, because there were no government quarters available or assigned to his family. He was therefore required by the Navy to seek the rental or purchase of a residence in a local community. The property was purchased with his wife, Judith C. Wolff, as tenants by the entireties. He resided at the house with his wife during the year 1982 and was a resident of the house at the time of the trial in 1986.
The witness further testified, in support of his contention that he was domiciled in Pennsylvania, that, notwithstanding his purchase of the property in Toms River, New Jersey, he was a registered voter in 1982 in Pennsylvania using the Burholme Avenue, Philadelphia, Pennsylvania address as his place of residence. He testified that he voted in the “Pennsylvania national election” in 1982 by absentee ballot. He also testified that he filed a 1982 school income tax return with the School District of Philadelphia and paid taxes in the amount of $415.39. A copy of that return was marked in evidence and indicates that the computation of school income tax was based on gross dividends and other distributions on stock, less capital gain distributions and nontaxable distributions. The school income tax due to the district of Philadelphia is a tax for residents of Philadelphia on their unearned income. The tax rate is the same as the rate for Philadelphia’s wage tax. The form also indicates a mailing address as follows: “Norman D. & Judith C. Wolff, 8046 Burholme Avenue, Philadelphia, Pa. 19111.”
The witness testified that, with regard to the homestead rebate claim form which he signed for 1982, the property in Toms River was his and his wife’s principal residence. The form “was made out jointly to husband and wife for which we both were listed on the form as same is recorded in the deed, and they required both signatures.” In addition to signing a *16 claim form for 1982, plaintiff signed one for each of the years 1979, 1980 and 1981.
Section 574 itself does not define the terms “domicile” or “residence,” and there are no reported federal cases in which the terms “domicile” or “residence” as used in § 574 have been defined. Further, no reported federal cases deal directly with state taxation of military income. Those cases which have been reported, concerning state taxation of property characterized as personalty, have declared that the purpose of § 574 is to free nonresident service personnel from the obligation to pay income as well as property taxes to the host state. The aim is to protect military service personnel from the risk of double taxation occasioned by their temporary duty in a state other than that of their domicile pursuant to military orders. California v. Buzard, 382 U.S. 386, 393, 86 S.Ct. 478, 483, 15 L.Ed. 2d 436 (1966).[1]
Section 574 is to be liberally construed. U.S. v. Illinois, 387 F.Supp. 638, (E.D.Ill.1975), aff’d 525 F.2d 374 (7 Cir.1975). With respect to the definition of terms, issues concerning the scope of § 574 give rise to federal questions which are to be determined as a matter of federal law. See, e.g., Buzard, supra, 382 U.S. at 393, 86 S.Ct. at 483 (“Absent persuasive evidence that Congress meant state labels to be conclusive in enactment [§ 574(2) ] referring to state ‘licenses, fees or excises,’ meaning of words would be determined as a matter of federal law.”). See also U.S. v. Chester Cty. Bd. of Assessment, etc., 281 F.Supp. 1001, 1003 (E.D.Pa.1968) (“Determination of scope of this section [574(2)(a) ] raised federal question which did not depend on diverse interpretations by several states of what was real or personal property.”). Accord U.S. v. Shelby Cty., Tenn., 385 F.Supp. 1187, 1189 (W.D.Tenn.1974).
*17 Cases concerning domicile generally pertain to the sufficiency of a federal court’s subject matter jurisdiction where it is alleged that complete diversity of citizenship is lacking, or where federal courts are called upon to construe state jurisdictional statutes. In such cases it is first recognized that a distinction exists between “actual” and “legal” residency. Actual residency “is something less than domicile,” merely connoting actual habitation or physical presence in a state. Mizell v. Eli Lilly & Co., 526 F.Supp. 589, 592 (D.S.C.1981) (construing a South Carolina jurisdictional statute). By contrast, the terms “legal residence” and “domicile” are considered equivalent.[2] Ibid,.; cf. Ellis v. Southeast Construction Co., 260 F.2d 280, 281 (8 Cir.1958) (“For purposes of federal jurisdiction ‘domicile’ and ‘citizenship’ are synonymous terms ... ”). See also Ferrara v. Ibach, 285 F.Supp. 1017, 1018 (D.S.C.1968).
The test to determine where domicile is established requires proof of (1) physical presence in a locale and (2) the intention to remain there indefinitely.[3] Mizell, supra, 526 F.Supp. at 592; Ellis, supra, 260 F.2d at 281. The cases stress that these elements must co-exist for domicile to be established. Further, the burden of establishing domicile generally rests with the party who relies on it. Bowman v. DuBose, 267 F.Supp. 312, 313-314 (D.S.C.1967); Lea v. Lea, 18 N.J. 1, 7, 112 A.2d 540 (1955); Michaud v. Yeomans, 115 N.J.Super. 200, 202, 278 A.2d 537 (Law Div.1971).
*18 Additionally, it is well settled that military service personnel are presumed to retain their domicile as of the date of enlistment, unless an intent to abandon an original domicile and adopt a new one can be established by the proofs. Bowman, supra, 267 F.Supp. at 313; Deese v. Hundley, 232 F.Supp. 848, 850 (W.D.S.C.1964); Ferrara, supra, 285 F.Supp. at 1019; Ellis, supra, 260 F.2d at 281. The federal cases direct consideration of the facts for manifestations of the requisite intent through the voluntary acts of the serviceman. Ellis, supra, 260 F.2d at 281-282. “The question of domicile is a mixed one of law and fact, with the factual elements predominating.” Ferrara, supra, 285 F.Supp. at 1019. As such, a serviceman’s intent to adopt a new domicile must be manifested by objective facts indicating that the desire to remain will not expire when the serviceman is transferred. Stifel v. Hopkins, 477 F.2d 1116, 1122 (6 Cir.1973).
Consideration may also be given to the expressed intent of the serviceman in conjunction with the objective evidence presented. For example, in Bowman, supra, 267 F.Supp. at 313-314, the court denied defendant's motion to dismiss due to lack of diversity of citizenship on the ground that defendant, a South Carolina domiciliary, failed to establish by “clear and unequivocal” evidence an intention on plaintiff’s part to establish a new domicile in South Carolina. Defendant argued that plaintiff could no longer assert that West Virginia[4] was his domicile at the point when he moved his family from “on-base” accommodations in South Carolina into a home purchased by him through the V.A. loan program. The district court first cited the rule that establishment of a home off-base, without more, is not sufficient evidence of an intention to change domicile. The court went on to distinguish the contrary results reached in both Deese and Ellis under similar circumstances, noting that in both cases, although the parties therein did in fact move off-base into privately acquired accommodations, *19 “[they] had done so, in each case, by [their] own testimony, for the purpose and with the intention of thereby establishing a change of domicile.” 267 F.Supp. at 314-315; emphasis supplied; see also Mizell, supra, 526 F.Supp. at 592-593.
The federal diversity cases have also addressed the circumstance where a serviceman’s intent to abandon his original domicile can be clearly established, yet objective evidence regarding his present intention to go elsewhere does not aid in the identification of any particular state which may properly be considered his newly intended domicile. Such a case has been held to give rise to an exception to the general rule with respect to servicemen. In Ferrara the district court observed that
... it would thus appear that the [serviceman] is at present “homeless”____ It has been pointed out, however, that during a long period of military service one may not be viewed as occupying, in a residential sense, ‘no man’s land.’ The fact that one is on military duty does not preclude him from establishing his residence where he is stationed if the circumstances show an intent on his part to abandon his original domicile and adopt the new one. [285 F.Supp. at 1019-1020, citing Ellis, 260 F.2d at 282]
The New Jersey cases concerning residence and domicile contain essentially the same principles as the federal diversity cases.[5]
A person may have several residences or places of abode. However, he can only have one domicile at one time. Domicile of choice is essentially a question of residence and intention, of factum and animus. A person may have his residence in one place with his domicile in another. Every person, under all circumstances and conditions, is deemed to have a domicile somewhere. The terms “domicile” and “residence” are not convertible terms or synonymous. In a strict legal sense the domicile of a person is the place where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. [Collins v. Yancey, 55 N.J.Super. 514, 520-521, 151 A.2d 68 (Law.Div.1959)]
Roxbury Tp. v. Heydt, 6 N.J.Tax 73 (Tax Ct.1983), deals with a taxpayer’s entitlement to the exemption provided to veterans’ widows in N.J.S.A. 54:4-3.30(c). In Roxbury, the widow of a U.S. Army officer was granted the exemption by the Morris County Board of Taxation and the township appealed. The *20 township argued that the serviceman was not a “citizen and resident” of the State. The court first equated “resident” with “domiciliary” as used in the statute granting a veteran’s deduction from real and personal property taxes. N.J.S.A. 54:4-8.10(f). The court also said that when citizenship is used to refer to an individual’s relationship to a state of the United States, the term is generally synonymous with domicile. The court then said that a domicile may be acquired by choice and its two essentials “are (1) physical presence in the state and (2) a concomitant, unqualified intention to remain there indefinitely. Gosschalk v. Gosschalk, 48 N.J.Super. 566, 573 [138 A.2d 774] (App.Div.1958), aff’d 28 N.J. 73 [145 A.2d 327] (1958).” Roxbury Tp. v. Heydt, supra, 6 N.J.Tax at 77. The court then recognized that “the concept of domicile must be applied flexibly case by case to insure that the correct result is accomplished given a certain set of facts,” ibid., and concluded that the deceased had been domiciled in New Jersey because he was present in the State and had the requisite intent.
In Citizens Bank and Trust Co. v. Glaser, 70 N.J. 72, 357 A. 2d 753 (1976) the Court considered the issue whether the Division of Taxation had improperly assessed inheritance taxes upon the estate of a decedent who, while living, maintained multiple residences. In such cases the Court described the meaning of domicile as “[a] matter of the mind ... an actual physical taking up of an abode in a particular State, accompanied by an intention to make [one’s] home there permanently or at least indefinitely, and to abandon [one’s] old domicile.” Id. at 81, 357 A.2d 753. In Lyon v. Glaser, 60 N.J. 259, 288 A.2d 12 (1972), the Court said, “A person has a right to choose his own domicile, and his motive in doing so is immaterial. The change may be made to avoid taxation, so long as the necessary ingredients for establishment of the new domicile are present.” Id. at 264, 288 A.2d 12; footnote omitted. The motive prompting a person to regard a place as his domicile is also immaterial under federal law. Ellis, supra, 260 F.2d at 281; Deese, supra, 232 F.Supp. at 850; cf. Mizell, supra, 526 F.Supp. at 593.
*21 In In re Jaffe, 74 N.J. 86, 376 A.2d 1181 (1977), the Court dealt with the meaning of “domicile” in R. 1:21-1(a), which concerns the requirements for practicing law in New Jersey. The Court said “(t)he word ‘domicile’ is used in R. 1:21-1(a) in its ordinary sense. It means one’s home____ Where there is more than one residence, ‘domicile is that place which the subject regards as his true and permanent home’.” 74 N.J. at 90-91, 376 A.2d 1181.
In State v. Benny, 20 N.J. 238, 119 A.2d 155 (1955), a case involving consolidated prosecutions for illegal voting, the Court considered inter alia, the distinction between the terms “domicile” and “residence” as applied to provisions of the State Constitution and statutes governing voting to qualifications. In so doing, the Court noted that “[a] person cannot actually live in one place for the comfort, convenience and social standing of himself and his family and maintain a wholly distinct domicile in another place.” Id. at 251-252, 119 A.2d 155.
Given the facts in the record before this court and the applicable law, plaintiff was domiciled in New Jersey in 1982. Although a person has a right to choose his domicile and the motives for his choice are immaterial to a determination of domicile, the necessary ingredients for establishing a domicile must be present to effectuate the choice. Lyon v. Glaser, supra. The necessary ingredients to establish domicile are a physical relationship or presence in a place and the intention to remain there indefinitely or to return there.
The law of Pennsylvania, coincidently, is to the same effect. “By domicile is meant the place where a person has his true, fixed permanent home and principal establishment, to which whenever he is absent he has the intention of returning.” Smith v. Smith, 206 Pa.Super. 310, 314, 213 A.2d 94, 96 (1965); emphasis supplied.
Plaintiff argues, as to the first point, that he has a relationship with 8046 Burholme Avenue, Philadelphia, Pennsylvania. It was the home in which he lived with his parents when he went into the Navy in 1958. He maintains his driver’s license *22 and voter registration at that address and he pays the Philadelphia school district income tax from that address. Although these facts may be indications of domicile, they are not such indications in this case. The property on Burholme Avenue is a single family residence owned by his parents and for which they pay the local property taxes. It is not the place of residence of plaintiff and his wife, and there is absolutely no evidence before the court that plaintiff and his wife ever resided in the Philadelphia property or that plaintiff has had any physical presence there since he went into the Navy except to visit his parents. The Philadelphia property was not the “home” of plaintiff and his wife. His use of the Philadelphia address for his driver’s license was a convenience to avoid the necessity of obtaining a license in each state in which he was stationed. Although plaintiff was registered to vote in Philadelphia, the only testimony about voting was that plaintiff voted in the “national election” of 1982. Although by “national election” plaintiff no doubt meant the election of United States Senator and Member of the House of Representatives, based on the evidence the court concludes that plaintiff’s voter registration was again a convenience to him. He was able to express his views on “national” issues without registering in each state in which he was stationed. Finally, his payment of the school income tax does not support physical contact. While the establishment of a domicile to obtain beneficial tax treatment is not improper, the payment of a tax in a given state does not establish a domicile or even residence. In other words one can establish a domicile for tax purposes but one cannot pay taxes to establish domicile. This is especially so in this case where the State of Pennsylvania does not tax “income derived from the United States Government for active duty outside the Commonwealth of Pennsylvania as a member of its armed forces.” 72 P.S. § 7303(a)(1). The City of Philadelphia also does not impose its wage tax on “wages or compensation paid by the United States to any person for active service in the Army, Navy or Air Force.” Philadelphia Code § 19-1501(8). While the Soldiers’ and Sailors’ Civil Relief Act is a shield to *23 protect servicemen from double taxation, it is not a sword to avoid the payment of taxes justly imposed.
In addition, there is not present in this case an intention on the part of plaintiff to return to Pennsylvania. Plaintiff’s own testimony was that he abandoned his intention to return to Pennsylvania when he was stationed in Georgia. At that time he had the intention to return to the South—either to Georgia or to South Carolina—in subsequent years. He did not change that intention when he was stationed in New Jersey. Accordingly, plaintiff was not domiciled in Pennsylvania. Of course, he was not domiciled in Georgia or South Carolina either because he had no physical presence in either state after his transfer to New Jersey.
A person is not, however, “homeless.” Every person has a domicile somewhere. In this case, plaintiff’s domicile in 1982 was in New Jersey. New Jersey was clearly his place of residence. He owned a home in New Jersey with his wife as tenants by the entireties and he resided in the house with his wife. Since he had no intention in that year to take up residence in any other state with which he had any contact, he must be considered to be a domiciliary of New Jersey. Plaintiff had abandoned his intention to return to Pennsylvania, he did not have a physical presence in the South, and it may be presumed that in 1982 his residence and domicile were one and the same. “Every person, under all circumstances and conditions, is deemed to have a domicile somewhere.” Collins v. Yancey, supra, 55 N.J.Super. at 521, 151 A.2d 68.
The determination that plaintiff was domiciled in New Jersey in 1982 is made without regard to his execution of a homestead rebate claim form for that year. However, such execution is further evidence that he was domiciled in New Jersey in 1982. Under the Homestead Rebate Act, N.J.S.A. 54:4-3.80a.,
Every citizen and resident of this State shall be entitled, annually, to a homestead rebate on a dwelling house and the land upon which such dwelling is situated, or on a dwelling house assessed as real estate situated on land owned *24 by another or others which constitutes the place of domicile and which is owned and used by the citizen and resident as a principal residence.
By executing and filing a homestead rebate form, plaintiff and his wife assert that they are citizens and residents of this State. “Citizen and resident” has been defined as domiciliary under N.J.S.A. 54:4-3.30. Roxbury Tp. v. Heydt, supra. There exists no compelling reason not to adopt the same definition for the Homestead Rebate Act. See Rubin v. Glaser, 83 N.J. 299, 416 A.2d 382 (1980), app. dism. 499 U.S. 977, 101 S.Ct. 389, 66 L.Ed.2d 239 (1980). Beyond that there is a “nexus between those who own their principal residences in New Jersey and those who pay the New Jersey gross income tax.” Id. at 307, 416 A.2d 382. The Homestead Rebate Act was enacted in conjunction with the New Jersey Gross Income Tax Act. No one, therefore, should be able to claim he is domiciled in New Jersey in order to obtain a homestead rebate while at the same time denying that he is domiciled in New Jersey in order to avoid paying the gross income tax. This interpretation of the statutes has been made by the Director, Division of Taxation, and it is wholly justified. N.J.A.C. 18:12-7.4(a)7.iii. reads as follows:
Property owned by military personnel who are on duty in the Armed Forces of the United States and are citizens and residents of this State shall be entitled to a homestead rebate provided that said property is not rented or leased to another.
This regulation is in conformity with the provisions of N.J.S.A. 54A:6-1 and -7. If a member of the armed forces is domiciled in New Jersey and hence required to pay the gross income tax, he is entitled to a homestead rebate.
Plaintiff is obligated to pay a gross income tax to the State of New Jersey for the tax year 1982. Entry of judgment will be withheld for ten days to allow the parties time to submit computations pursuant to R. 8:9-3 indicating what credit, if any, plaintiff is entitled to have against his gross income tax by virtue of the school income tax paid to the School District of Philadelphia for 1982. N.J.S.A. 54A:4-1.

It is noted that the special tax treatment afforded by the New Jersey Soldiers’ and Sailors’ Civil Relief Act of 1974, N.J.S.A. 38:23C-1 et seq., which sets limits on the collection of taxes or assessments levied against military personnel, does not extend to taxes imposed on income. Of course, the Gross Income Tax Act contains its own exclusion.

“Residence” and “domicile” are compared in Black’s Law Dictionary (5 ed. 1979) as follows:
As “domicile” and "residence” are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one’s domicile, [at 1176-1177]

Distinguish this from an intention to remain permanently. At least one federal diversity case instructs that an intent to live permanently at a place is not required. Ellis, supra, 260 F.2d at 281.

The court found that West Virginia was undisputedly plaintiffs place of domicile at the time he enlisted in the U.S. Army.

See, e.g., New Jersey Division of Taxation, New Jersey State Tax News 44, Vol. 13, No. 2 (Mar./Apr. 1984) [Tax Brief entitled “Gross Income Tax—Military Residents’’]