NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Mala Sundar**
  **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
 Trenton, New Jersey 08625
 Telephone (609) 815-2922x54630
 TeleFax:  (609) 984-0805
taxcourttrenton2@judiciary.state.nj.us

August 17, 2017

Wayne and Rose Ann Citron
Self-represented

Abiola Miles
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 106
Trenton, New Jersey 08625

Re:      Citron v. Director, Division of Taxation
         Docket No. 007787-2016

Dear Plaintiff and Counsel:

This letter constitutes the court's opinion after a hearing in the above captioned matter concerning plaintiffs' challenge to defendant's final determination of February 1, 2016, which demanded a repayment of homestead benefits for tax years 2010 and 2011, and denied such a benefit for tax year 2012.  For the reasons stated below, the court upholds defendant's final determination.

## PROCEDURE

Defendant ("Taxation") addressed its final determination to Rose and Wayne Citron.  Rose Citron then wrote a letter to the Tax Court Management Office ("TCMO") that she was appealing the final determination.  The TCMO then sent her the form complaint to be used for filing complaints against rebate denials.  On the form complaint, plaintiff was noted as "Wayne Citron

*

Citron Family Trust." The complaint was signed by Wayne Citron. Mr. Citron, who appeared for oral argument, stated that the house located at 6 Carter Drive, Marlboro, New Jersey (hereinafter "New Jersey property"), and subject of the homestead benefit claim, was always owned by his wife Rose Citron, and was placed in a trust sometime in 2013. Thus, for tax years 2010-2012, the years at issue, Mrs. Citron was the legal owner of the house, not the trust. Therefore, there was no issue that the complaint required prosecution by an attorney. The court permitted Mr. Citron to argue the matter since Mrs. Citron was allegedly unavailable due to her employment, since Mr. Citron has an undisputed spousal interest in the New Jersey property, and further since the final determination was addressed to both Citrons.[1]

**FACTS**

For tax years 2010-2012, husband and wife filed non-resident New Jersey joint gross income tax ("GIT") returns, showing a street address of 760 Magazine Street, New Orleans, Louisiana, and noting on those returns that their state of residency was Louisiana. For 2010, they reported gross income of $78,240 of which $60,798 (compensation income) was sourced to New Jersey. For 2011, they reported gross income of $91,920 of which $60,135 (compensation income) was sourced to New Jersey. For 2012, they reported gross income of $68,890 of which $57,433 (compensation income) was sourced to New Jersey. For each of these tax years, the returns claimed an additional personal exemption for a spouse being disabled.

The couple filed joint federal income tax returns similarly. A copy of the return for tax year 2012 provided to this court (duly redacted) showed their home address as 760 Magazine Street, New Orleans, Louisiana.

---

[1] The post-hearing reply brief was filed by Rose Ann Citron naming herself as the "plaintiff."

The couple also filed joint personal income tax returns as residents in Louisiana for tax years 2010-2012. On each of those resident returns, they listed their address as 760 Magazine Street, New Orleans, Louisiana.

For tax years 2010-2012, husband and wife filed applications for homestead benefit electronically with respect to the New Jersey property. Those applications listed the New Jersey property as being owned by Rose Ann Citron.[2]

For tax years 2010 and 2011 Taxation granted the couple homestead benefits. However, it denied the 2012 application. The couple protested the denial on May 27, 2015.

On February 1, 2016, Taxation issued a lengthy final determination upholding the denial and further seeking a repayment of the 2010 and 2011 benefits as being erroneously paid. Taxation noted that "during 2010 the Social Security Administration ("SSA") had decided that" Rose Ann Citron "no longer met the definition of disabled, as she was able to engage in substantial gainful activity."[3] Thus, and since Taxation followed the SSA's definition of a disabled individual, Mrs. Citron was ineligible to claim a homestead benefit. As for 2010 and 2011 tax years, Taxation noted that the couple were further ineligible because their gross income was over the $75,000 income limit. Next, Taxation noted that for all three years, plaintiffs filed New Jersey gross income tax returns as non-residents of the State and resident income tax returns in Louisiana, thus, as non-residents, were ineligible for the homestead benefit for all three tax years 2010-2012.

---

[2] The transfer deeds relative to the New Jersey property from 1989-2013 show Mr. Citron as the "grantor." For instance, the August 2, 1989 deed shows a transfer from Rose Ann Citron to Wayne Citron and herself. In connection with Rose Ann Citron's Chapter 7 bankruptcy filed August 10, 1989, the Chapter 7 Trustee transferred back Rose Ann's interest and ownership in the New Jersey property by deed of April 23, 1990, noting that the transfer of title and ownership was subject to any mortgages of record, and the interest of Wayne Citron (the non-debtor spouse). Then in 2013, Rose Ann and Wayne Citron, as grantors, transferred the New Jersey property to the Trustee of the Citron Family Trust, but retaining a life interest in the same.

[3] A letter from the SSA to Mrs. Citron, dated July 24, 2009, stated that Mrs. Citron had requested a waiver of "Social Security overpayment."

At the hearing, Wayne Citron argued that only he was a resident of Louisiana (living at a home owned by his wife). He claimed that the homestead benefit applications filed by them jointly were in error since the New Jersey property was always owned only by his wife. He also stated that his wife was always a New Jersey resident as evidenced by her New Jersey driver's license, license issued by the New Jersey Division of Consumer Affairs which licensed her to practice as a respiratory care practitioner, and license issued by the New Jersey Department of Banking and Insurance for her to be an insurance agent. Further, the New Jersey property address was listed on her W-2s and the 2010 social security benefit earning information report (Form SSA-1099). Mr. Citron argued that these documents should trump the inconsistent tax return filings which were done to reduce income tax since filing with the status of "married filing separate" as opposed to "married filing joint" would entail higher income taxes.

Mr. Citron further claimed that since the court reduced property taxes on the New Jersey property by judgment dated December 17, 2010 pursuant to litigation in Rose Ann Citron v. Township of Marlboro (Docket No. 017065-2010) it meant that Rose Ann Citron was a New Jersey resident. That complaint challenged the assessment of local property taxes on the New Jersey property for tax year 2010 claiming that the Township's assessor had over-valued the property.

Mr. Citron also pointed out that this court had issued a judgment granting Rose Ann Citron a $250 disabled person deduction pursuant to litigation in Rose Ann Citron v. Township of Marlboro (Docket No. 015208-2011). A review of the court's file in that case shows that the Mrs. Citron filed a complaint claiming that the Township had improperly reversed the grant of the property tax deduction for tax year 2010 on grounds she had not filed a timely application for the same. This court's judgment dated October 12, 2012, which recited the New Jersey address, reads as follows:

4

The matter having been tried on the merits and the Court having considered the evidence and arguments by or on behalf of the parties, the decision of the defendant municipality charging back the Disabled person deduction provided by N.J.S.A. 54:4-8.41 in the amount of $250.00 for the tax year 2010 is reversed and the deduction is granted.[4]

Mr. Citron provided an excerpt of the electronic property record card for the Louisiana home. This shows the owner as Mrs. Citron with title transfers from-and-to her in 2006, 2012, and 2013. Mr. Citron also provided a letter dated March 12, 2012 from the Orleans Parish Assessor's office. In that letter, the assessor cancelled the homestead exemption granted for the Louisiana property for tax years 2011 and 2012 because "both" Mr. and Mrs. Citron had claimed "a Homestead Exemption along with a Disability Exemption" for those tax years for the New Jersey property. Since the Louisiana Constitution allows an exemption for a home occupied and titled to either husband or wife, but limits the same to only "one such homestead," the assessor cancelled the 2011 and 2012 exemption granted to Mrs. Citron for the Louisiana property.

**ANALYSIS**

N.J.S.A. 54:4-8.59(a) allows a homestead rebate or credit (called "homestead benefits") to a New Jersey "resident." The amount is a certain percentage of property taxes (but not more than $10,000) "paid by the claimant . . . on the claimant's homestead." The percentage depends on the claimant's gross income. Ibid. Thus, a rebate of 20% of taxes is allowed if the gross income does not exceed $100,000; 15% if the gross income is between $100,000 and $150,000; and 10% if the gross income is between $150,000 and $250,000. Ibid.

A different computation is used for a resident claimant who is "allowed to claim a personal deduction [under N.J.S.A. 54A:3-1(b)] as a . . . disabled taxpayer." N.J.S.A. 54:4-8.59(b). Such

---

[4] N.J.S.A. 54:4-8.41 allows a $250 deduction to a "citizen and resident" of New Jersey, who is "permanently and totally disabled" if younger than 65 years, against local property taxes assessed for property owned by such person in New Jersey in which such person resides.

5

an individual is provided the higher of the percentage computation as noted above, or the amount by which the property taxes exceed 5% of the claimant's gross income, provided it is within a certain "range" and not more than the taxes actually paid. Ibid. For instance, if the gross income does not exceed $70,000, then the "range" of rebate is $1,200 to $1,000. Ibid. For gross income over $70,000 but less than $125,000, then the range would be $800 to $600. Ibid.

The term "homestead" is defined as "a dwelling house and the land on which that dwelling house is located which constitutes the place of the claimant's domicile and is owned and used by the claimant as the claimant's principal residence." N.J.S.A. 54:4-8.58. The term "principal residence" means a "homestead actually and continually occupied by a claimant as the claimant's permanent residence, as distinguished from a vacation home, property owned and rented or offered for rent by the claimant, and other secondary real property holdings." Ibid.

The term "resident" is defined as one who is "domiciled" in New Jersey unless he or she (1) does not have a "permanent place of abode" in the State; (2) maintains one outside the State; and (3) spends only a total of 30 days in the State. N.J.S.A. 54:4-8.58. A non-domiciliary is deemed a resident if he or she has a "permanent place of abode" in this State and spends a total of more than 183 days in a year in here. Ibid. Note that this is the same as the definition of "resident" under the GIT statute. See N.J.S.A. 54A:1-2(m). The GIT statute adds that a "nonresident taxpayer" is one "who is not a resident." N.J.S.A. 54A:1-2(n).

A "disabled" person (who can claim an exemption on their GIT returns under N.J.S.A. 54A:3-1(b)) is one who has a "total and permanent inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, including blindness." N.J.S.A. 54A:1-2(f). Note that this definition is the same for purposes of the $250 property tax deduction allowed under N.J.S.A. 54:4-8.41 to one who is a New Jersey resident and

6

younger than 65 years of age.  See N.J.S.A. 54:4-8.40 (defining one who is "[p]ermanently and totally disabled" as a "total and permanent inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, including blindness").[5]

The Legislature allows Taxation to demand repayment of any "homestead rebate or credit" which was paid based upon an "intentional misrepresentation of a material fact" or was "paid in error."  N.J.S.A. 54:4-8.66a; 4-8.66b.  If the recipient fails to return the payments, Taxation can recover the same with interest.  N.J.S.A. 54:4-8.66b.  A penalty of 150% of the rebate can also be imposed if the rebate was paid due to misrepresentation.  N.J.S.A. 54:4-8.66a.

The primary issue is whether plaintiffs or even Mrs. Citron were/was eligible for homestead benefit for each tax year because of the inconsistent income tax filings.  The couple are essentially claiming that their non-resident GIT filings have no bearing on the eligibility for the homestead benefit.  The court is hard-pressed to accept this argument.  First, the returns were filed under penalties of perjury.  This means that the couple were stating as true that they were not residents of New Jersey when they filed their GIT returns.  They never amended those GIT returns to claim resident status.  Nor did they amend their Louisiana married filing joint resident income tax returns to claim themselves as non-residents of that State.  Yet, and purely to receive homestead benefits from this State, they are now telling this court that they intentionally lied about their non-resident status on the GIT returns.

Second, by claiming to be non-residents of New Jersey, they paid lower GIT by having only New Jersey sourced income taxed, because a married couple filing joint resident GIT returns

---

[5] Note that for purposes of the property tax reimbursement ("PTR") benefit, which is a separate type of homestead benefit allowed to New Jersey residents, a "disabled person" is one who is "receiving monetary payments" from the SSA "on December 31 in all or any part of the year for which a homestead property tax reimbursement under this act is claimed."  N.J.S.A. 54:4-8.67.

7

would be taxed upon income from <u>all</u> sources. <u>See</u> <u>Riehm v. Director, Division of Taxation</u>, 7 <u>N.J.</u> <u>Tax</u> 88, 98 (Tax 1984) ("unlike the income of nonresidents, residents' income, wherever derived, was subject to the state income tax"), <u>aff'd</u>, 8 <u>N.J. Tax</u> 312 (App. Div. 1986). Mr. Citron's allegation during the hearing that this is of no moment since all of the New Jersey source income was earned only by Mrs. Citron is of no moment legally since there is no support either in any statute or caselaw permitting such a result (disregarding the fact that the W-2s given to this court shows Mrs. Citron's earnings as much lesser than the New Jersey sourced income).

Third, the documents showing the New Jersey address do not by themselves establish that Mrs. Citron (or the couple) was a resident of New Jersey under the above cited definitions. It should be also noted that even if they were given any weight for purposes of establishing Mrs. Citron as being a New Jersey resident, they are not persuasive because they do not relate to the tax years at issue. For instance, the license issued by the Division of Consumer Affairs is for the period April 2016 to March 2018. Her "license" with gaming with an issue date of 2001 and expiration date of 2013 is "inactive," as is her "casino employee registration" which has an issue date of 2013. The driver's license issue date is 2014. Mrs. Citron's bankruptcy was filed in 2009, not in any of the tax years at issue here, thus, her April 2010 discharge is not dispositive of her (or her husband's) New Jersey residency status for purposes of the homestead benefits. It should be noted that the venue for filing a bankruptcy is not limited to residence and domicile only, and further, the domicile or residence needs to be for at least a 6-month period prior to the bankruptcy filing. <u>See</u> 28 <u>U.S.C.</u> §1408. Thus, her 2009 bankruptcy would only require that she be domiciled or resident of New Jersey for 6 months in 2009, which does not assist in establishing her New Jersey residency for tax years 2010-2012.

More importantly, these documents do not overcome or amend the GIT returns filed by the couple jointly where they averred (under penalties of perjury) that they were non-residents of New Jersey for the tax years at issue. They do not require this court to accept a proposition that claiming non-resident status to achieve lower GIT payment is irrelevant to payment of homestead benefits. This is especially where those benefits are aimed to lower the burden of property taxes as individuals who are New Jersey residents owning and continually occupying a home as their principal home. See Rubin v. Glaser, 83 N.J. 299, 306 (1980) (the Homestead Rebate "Act's application solely to principal places of residence is closely related to the beneficent purpose of alleviating the heavy realty tax burden"), aff'g 166 N.J. Super. 258 (App. Div. 1979), app. dismissed, 449 U.S. 977 (1980). The Court noted that "[t]here is some nexus between those who own their principal residences in New Jersey and those who pay the New Jersey gross income tax." Id. at 307. Thus, the rebate or benefits are not "intended to aid [a] taxpayer in owning two or more homes." Glaser, supra, 166 N.J. Super. at 265. As the court there noted:

> We do not regard use of the term "homestead" . . . as being without significance to eligibility for the rebate. Had the framers of this [law] intended all residential property to be eligible, they could easily have so provided without reaching for a term previously without significance to New Jersey law. By this term, they sought to communicate the popularly understood concept of an owner's principal residence.
>
> [Id. at 264.]

In affirming, the New Jersey Supreme Court also noted that although the Constitution had not defined the word "homestead," our "Legislature adopted a restrictive approach, by defining homestead in terms of the principal residence and domicile." 83 N.J. at 304.

Thus, in Wolff v. Baldwin, 9 N.J. Tax 11 (Tax 1986), the court agreed with Taxation that an individual's filing of a homestead rebate claim refuted his assertions that he, as a member of the Navy, was a nonresident. The court ruled as follows:

> The Homestead Rebate Act was enacted in conjunction with the New Jersey [GIT] Act. No one, therefore, should be able to claim he is domiciled in New Jersey in order to obtain a homestead rebate while at the same time denying that he is domiciled in New Jersey in order to avoid paying the gross income tax.
>
> [Id. a 24 (citing and quoting Glaser, supra, 83 N.J. at 307.]

Here, like in Wolff, supra, the Citrons are claiming to be non-residents of New Jersey for GIT purposes so that they pay lower taxes, but are claiming to be residents to obtain tax benefits. This type of manipulation of a residency status to obtain relief provided by legislative grants to New Jersey residents from property taxes is not favored. This conclusion comports with the well-established principle that statutes granting tax benefits (such as homestead benefits and rebate) are construed narrowly and "against those claiming exemption" from taxes, or in this case, eligibility for benefits. MacMillan v. Director, Div. of Taxation, 180 N.J. Super. 175, 178 (App. Div. 1981), aff'd, 89 N.J. 216 (1982).

Taxpayers must accept the consequences of their deliberate decision to file income tax returns as a resident or non-resident. Here, Taxation accepted the couple's GIT returns for the tax years at issue, thus, accepted the couple's non-residency status. The couple now cannot seek to subvert that status (and attendant tax benefits) by claiming to be residents. Cf. Kaplan v. Director, Div. of Taxation, 23 N.J. Tax 594, 608 (Tax 2008) (rejecting taxpayers' arguments that the losses from their single member limited liability companies should be taxed under the category of partnership income even if the tax returns reported such income as individual business income), aff'd, 24 N.J. Tax 415 (App. Div.), certif. denied, 199 N.J. 516 (2009); see also Chemical N.J.

Holdings, Inc. v. Director, Div. of Taxation, 22 N.J. Tax 606, 611-12 (App. Div. 2004) ("a voluntary business decision is to be given its tax effect in accord with what actually occurred," thus, plaintiff's "choice of filing status was [not] merely a ministerial task" but was a "decision" which "was clearly of significant business importance") (citation and internal quotation marks omitted).

That the previously granted homestead exemptions for 2011 and 2012 with respect to the Louisiana property were cancelled does not make Mrs. Citron a New Jersey resident. The decision to cancel was because an exemption can be granted only on one homestead, not two. There was no finding by that assessor's office whether Mrs. Citron was a non-resident of Louisiana or that she never owned and occupied the Louisiana property.[6] Thus, her substantive eligibility to an exemption was not the basis for the revocation of the exemption for 2011 and 2012, rather it was the fact that she was claiming an exemption on two residences.

Similarly, this court's judgment in the local property tax appeal for tax year 2010 as to the New Jersey property does somehow overcome the couple's jointly filed non-resident GIT returns for any of the tax years at issue here.[7] Any owner of property located in New Jersey can appeal the local property taxes assessed against such property, regardless of whether the owner is a resident or non-resident of New Jersey, and whether or not the property was that individual's primary, secondary, or seasonal residence. See N.J.S.A. 54:3-21.

---

[6] Louisiana grants a homestead exemption "from state, parish, and special ad valorem taxes to the extent of seven thousand five hundred dollars of the assessed valuation . . . to the primary residence . . . which serves as a bona fide home and which is owned and occupied by any person . . . owning the property . . . ." La. Const. Art. VII, §20(A)(1). Although the exemption also extends to a surviving or former spouse who occupies the homestead, it is restricted to "not more than one homestead owned by either the husband or wife, or both." Art. VII, §20(A)(2). Further, "in no event shall more than one homestead exemption extend or apply to any person in this state." Art. VII, §20(A)(8).

[7] The matter was actually settled by a stipulation filed by the parties whereby they agreed to a lower market value. The court's judgment reflected the stipulation. Thus, the case was never tried, nor were there any findings that Rose Ann Citron and/or Wayne Citron were New Jersey residents for purposes of an entirely different statute, the homestead benefit program at issue here.

The court also notes that the October 2012 judgment of the Tax Court reversing the denial of the $250 property tax deduction under N.J.S.A. 54:4-8.41 does not act as an estoppel to Taxation's denial of the 2010-2012 homestead benefits. This is because the defendant therein was not Taxation. Further, the complaint filed by Mrs. Citron was that the Township erroneously claimed that she never (or had untimely) filed the application for the benefit. Plaintiffs here provided absolutely nothing to indicate that either the court or the defendant Township was even aware that the couple had deliberately filed GIT returns as non-residents, thus, taking an inconsistent position (under penalties of perjury) as to their (or Mrs. Citron's) New Jersey residency status.

Additionally, as Taxation points out, the residency status is required to exist as one year prior to October 1 of the pretax year, with a resident being a New Jersey domiciliary for one year immediately preceding October 1 of the pretax year. See N.J.S.A. 54:4-8.40; 8.44. Thus, (and ignoring their non-resident GIT returns for a moment), even if either of the couple was a New Jersey resident as of October 1, 2008 and October 1, 2009, it would not automatically establish that they were eligible for the homestead benefit under a separate statute, N.J.S.A. 54:4-8.59. This latter statute provides a rebate or credit "in relation to the amount of the property taxes actually paid during the tax year for the homestead owned and occupied as such at 12:01 a.m. on October 1 of the tax year." N.J.S.A. 54:4-8.59(b)(2). As Taxation correctly points out, a person who does not reside on the house on October 2, 2009 can still get the $250 deduction for tax year 2010 but would not be eligible for a homestead benefit for tax year 2010. Thus, it is not necessarily true or automatic that because Mrs. Citron or the couple may have been a New Jersey resident/s on October 1, 2008 and October 1, 2009, she or they were (or must have been) residents for purposes of the homestead benefits law, N.J.S.A. 54:4-8.59.

Even if the court were to hold a trial (since Mrs. Citron never appeared nor testified nor even provided any certifications for purposes of this matter), and then determine that Mrs. Citron was a New Jersey resident under N.J.S.A. 54:4-8.58 and N.J.S.A. 54A:1-2(m) for 2010-2012, three consequences are noteworthy. One is that this would not automatically require a rejection of their non-resident GIT returns since they elected to file those returns as married filing joint status. See N.J.S.A. 54A:8-3.1(d); (h); 5-6(b). Two is that the returns, under the married filing joint status, could be subject to an audit by Taxation, and plaintiffs as New Jersey residents could be liable for additional GIT on income from all sources, including the attendant interest and penalties. Three is that since gross income from all sources, in-and-out-of State, would be considered to determine the income eligibility limits, homestead benefits for 2010 and 2011 would not be available since the couple's gross income exceeded the $75,000 limit set by the Annual Appropriations Act for those years.[8] However, the court is not making a determination that either individual was a New Jersey resident in face of their non-amended non-resident GIT returns filed under the "married filing jointly" status.

---

[8] This consequence is predicated upon the loss of the disability status of Mrs. Citron because Taxation's final determination stated that "during 2010" the SSA "had determined" that Mrs. Citron was no longer disabled since she was able to engage in "substantial gainful activity." Neither Taxation nor Mr. Citron provided the SSA determination that Mrs. Citron was no longer disabled or explain why she received SSA-1099 for 2010. Nor was there any explanation of the July 2009 letter from the SSA. Taxation points out that the 2010 non-resident GIT return shows that the wage/compensation income far exceeded the monthly income limits set by the SSA in determining whether a recipient is engaged in substantial gainful activity, i.e., $1,000 for tax year 2010. For tax years 2011 and 2012, the Citrons provided nothing to the court to show that Mrs. Citron received SSA disability benefits. Thus, Taxation's determination that Mrs. Citron was not disabled for purposes of the homestead benefits is persuasive  The court reiterates that it is not making any such finding here since its decision to uphold Taxation's final determination is on the undisputed GIT returns filed by the Citrons where they claimed, under penalties of perjury, to be non-residents of New Jersey.

## CONCLUSION

For the aforementioned reasons, the court finds that Taxation's final determination which demanded a return of the 2010 and 2011 rebate of $1,000 erroneously paid to Mrs. & Mr. Citron, and which also denied such a rebate for tax year 2012, was proper. A judgment upholding the final determination will accompany this opinion.

Very Truly Yours,

Mala Sundar, J.T.C.